IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARIA DALVA VIERA DE | § | |
| OLIVERA DOS SANTOS | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | CIVIL NO. 4:06-CV-292-Y |
| | § | |
| BELL HELICOPTER TEXTRON, INC. | § | |
| DISTRICT | § | |
|     Defendant/Third-Party | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| HELISUL TAXI AERO LTDA | § | |

ORDER GRANTING IN PART AND
DENYING IN PART THIRD PARTY MOTION FOR RECONSIDERATION

Pending before the Court is the Motion for Reconsideration (doc. #99) filed by third-party defendant Helisul Taxi Aero, LTDA ("Helisul"), as well as Helisul's Amended Motion for Reconsideration (doc. #102).  After review, the Court concludes that Helisul has consented to jurisdiction for all of Bell's claims against it.  The Court further concludes that it has specific jurisdiction over Helisul.  As a result, the Court will deny both motions.


I.  Background

As described in the Court's previous order denying Helisul's motion to dismiss for lack of personal jurisdiction, this case arises from a helicopter crash in the Brazilian Amazon jungle in January 2004.  At the time of the crash, the helicopter was being piloted by Sergio Augusto dos Santos, a Brazilian national.  Dos

Santos, who died in the crash, was the only occupant of the helicopter.  Maria Dalva Viera de Olivera dos Santos (Plaintiff), the wife of the pilot, then brought this action alleging negligence and strict products liability against the manufacturer of the helicopter, defendant/third-party plaintiff Bell Helicopter Textron, Inc. ("Bell").   After Bell filed its third-party complaint against Helisul, Plaintiff amended to add a claim of negligence against Helisul.  Plaintiff contends that her husband was operating the helicopter under normal conditions when its tailboom attach fittings failed, causing the tailboom to separate from the helicopter.

Helisul filed its motion to dismiss for lack of personal jurisdiction (doc. #61) on April 14, 2008.  Bell's response argued that the Court had both specific and general jurisdiction over Helisul and that Helisul had consented to jurisdiction in this Court as part of the lease-purchase agreement relating to the helicopter involved in the crash.

As an initial matter, Bell was required to respond to the Court's observation that, in prior similar litigation, Bell had taken an apparently inconsistent position regarding personal jurisdiction over Helisul.  *See Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1324 (S.D. Fla. 2006).  In that litigation, Bell joined in a motion for dismissal on the basis of *forum non conveniens* which argued, inter alia, that dismissal was appropriate because "personal jurisdiction [over Helisul] does not

2

exist *in the United States*."  (Emphasis added.)  In this Court's order denying Helisul's motion to dismiss, IT concluded that Bell was not estopped from arguing that this Court has personal jurisdiction over Helisul and that Helisul had consented to personal jurisdiction as part of its agreement with Bell.

The helicopter involved in the crash, a Bell 206L-4, was one of four purchased by Helisul from Bell in 1996.  The purchase of the Bell 206L-4 was made by way of a ten-year lease-purchase agreement ("the Agreement"), which Helisul financed through promissory notes. The Agreement contained a clause entitled "Jurisdiction, Applicable Law," which in its entirety states:

> This Lease shall be construed in accordance with the laws of the State of Texas, U.S.A.  Lessee consents to the non-exclusive jurisdiction of the courts of general jurisdiction for the State of Texas, County of Tarrant, or in the Federal District Court of the Northern District of Texas, Fort Worth Division.  Nothing contained herein, shall prevent or limit Lessor's right to bring suits or institute any judicial proceeding in any jurisdiction were [sic] the Aircraft or Lessee's assets may be regis-tered or located from time to time, including without limitation the competent courts of Brazil.

(Def.'s Resp. App., doc. #93, at 47.)  Helisul further agreed to "indemnify Lessor, defend and hold Lessor harmless from any and all liability, loss, damage, expense (including legal expenses and reasonable attorney's fees), suits, claims or judgment arising from injury to person or property, . . . and shall, at [Helisul's] own cost, defend any suits which may be brought against Lessor, either alone or in conjunction with others, regarding any such liability

of [sic] claim(s)."   (*Id.* at 43.)

After the Court entered its order denying Helisul's motion to dismiss, Helisul filed its first motion for reconsideration (doc. #99).  In that motion Helisul challenges the Court's characterization of various of Helisul's contacts with the state of Texas.  But the Court's order denying Helisul's motion to dismiss did not rest upon a minimum-contacts analysis.  And to the extent that this order does analyze Helisul's contacts with Texas, such contacts are supported by the evidence submitted by Bell.  Accordingly, Helisul's motion for reconsideration is DENIED.

Helisul has also filed an amended motion for reconsideration (doc. #102).  In that motion Helisul argues that Bell is not a party to the Agreement and, therefore, cannot invoke the forum-selection clause against Helisul.  Helisul also argues that the Court should conclude that Bell is judicially estopped from arguing that Helisul is subject to personal jurisdiction in the United States.

In responding to the amended motion for reconsideration, Bell notes that it possesses certain documents that demonstrate it is entitled to invoke the Agreement's forum-selection clause.  On January 14, 2009, after review of the motion to reconsider, the Court ordered Bell to produce such documents for in-camera review (doc. #111).

Bell timely produced the documents, and, although not requested by the Court, Bell accompanied them with a brief (doc. #112) advanc-

4

ing arguments as to their significance.  Helisul filed a response
(doc. #122).  The Court now turns to Helisul's arguments in favor
of reconsideration and dismissal.

II.  Discussion

    A.  Standard for Reconsideration

    "[T]he Federal Rules of Civil Procedure do not recognize a
general motion for reconsideration . . . ."  *St. Paul Mercury Ins.
Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997).  And
neither party cites the rule of procedure under which they would
have the court revisit its order on Helisul's motion to dismiss.
The United States Court of Appeals for the Fifth Circuit has ex-
plained that "a 'motion for reconsideration' . . . will be treated
as either a motion 'to alter or amend' under Rule 59(e) or a motion
for 'relief from judgment' under Rule 60(b)."  *Teal v. Eagle Fleet,
Inc.*, 933 F.2d 341, 347 (5th Cir. 1991).  But Rules 59 and 60 apply
only to final judgments.  *See James v. Sadler*, 909 F.2d 834, 836
(5th Cir. 1990).  The Court's order on Helisul's motion was inter-
locutory, not final.  *See Moody v. Seaside Lanes*, 825 F.2d 81, 85
(5th Cir. 1987) (explaining that only the resolution of an entire
adversary proceeding is "final").

    A court reconsiders an interlocutory order under Rule 54(b).
*See* FED. R. CIV. P. 54(b) ("[A]ny order or other decision, however
designated, that adjudicates fewer than all the claims or the rights

and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *see also Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court. *See Livingston Down Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002). And the standard would appear to be less exacting than that imposed by Rules 59 and 60. *See id.* Even so, considerations similar to those under Rules 59 and 60 inform the Court's analysis. *See id.; see also McLaughlin v. Unum Life Ins. Co. of Am.*, 212 F.R.D. 40, 41 (D. Me. 2002) (discussing the standard for review of an interlocu-tory order). That is, considerations such as whether the movant is attempting to rehash its previously made arguments or is attempting to raise an argument for the first time without justification bear upon the Court's review of the motion for reconsideration. *See McLaughlin*, 212 F.R.D. at 41; *also cf. Arrieta v. Yellow Transp., Inc.*, No. 3:05-CV-2271-D, 2009 WL 129731, at *1 (N.D. Tex. Jan. 20, 2009) (stating a motion to reconsider is not the proper vehicle for rehashing old arguments or raising arguments that could have been presented earlier).

B.   Judicial Estoppel

As noted in the Court's order denying Helisul's motion to dismiss, judicial estoppel is an equitable doctrine that may in a court's discretion be invoked to "prevent[] a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Maine v. New Hampshire*, 532 U.S. 742, 749 (2001).  Helisul's arguments essentially call upon the Court to revisit this discretionary decision.  Helisul has raised no new arguments or evidence that convince the Court of the need to do so.  And there is no need for the Court to rehash its reasoning in declining to invoke the doctrine here.  It suffices to say that, based on the circumstances of this case, the Court concluded that use of its discretion to prevent Bell from arguing the personal-jurisdiction issue was not warranted.  *See New Hampshire*, 532 U.S. at 749 (stating a court may consider, in determining whether to apply judicial estoppel, whether party taking inconsistent position will gain unfair advantage or has caused unfair detriment to opposing party); *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) ("[J]udicial estoppel is an equitable doctrine, and the decision whether to invoke it [is] within the court's discretion . . . .").


C.   Personal Jurisdiction

7

1.   Forum-Selection Clause

The United States Supreme Court has stated that "because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *See Burger King, Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)) (internal quotations omitted). For instance, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). "[P]articularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Burger King*, 471 U.S. at 473 n.14 (citing *Nat'l Equip. Rental, Ltd.*, 375 U.S. 311). "Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." *Id.* (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

In its motion for reconsideration, Helisul asserts that neither Bell nor any of its subsidiaries is a party to the Agreement. Hence, according to Helisul, Bell may not enforce the Agreement's provisions, including the forum-selection clause. Helisul insists that only Textron Financial Corporation ("TFC"), the company that

is named as the lessor in the Agreement and through which the
Agreement was financed, may enforce the forum-selection clause.
Bell responds that under the terms of an agreement between itself
and TFC, and in light of the course of dealing of all of the
companies involved in the purchase of the helicopter at issue, it
is entitled to enforce the forum-selection clause.

As noted, in responding to Helisul's motion, Bell has produced
certain documents in support of its contention that it may enforce
the forum-selection clause.  Bell and TFC are subsidiaries of
Textron, Inc. ("Textron"), a multi-industry company consisting of
various subsidiaries and divisions.  To facilitate TFC's financing
of lease and purchase agreements, such as the lease-purchase
agreement at issue in this case, Textron, Bell, TFC, and two other
Textron subsidiaries entered into certain agreements (Bell's In-
Camera Doc. Br. App., doc. #112, at 4, Exhibits A, B, and C.).  The
agreements consist of three documents.  First, there is a
"Receivables Purchase Agreement." (Ex. A.) The Receivables Purchase
Agreement provides that "TFC may purchase Textron products and lease
them to customers identified by Textron or Textron's dealers and
distributors." (Ex. A. at 3.)  This provision explains why TFC is
the lessor named in the Agreement.  "Textron," as used in the
Receivables Purchase Agreement, includes Bell. (Ex. A at 1.)  Thus,
the products referred to would include Bell helicopters and the
identification of customers would include Bell.

9

Most importantly to Bell's argument, the Receivables Purchase Agreement includes a section titled "Recourse to Textron." (*Id.*) This section first establishes the default rule that Textron, and thus Bell, would bear the ultimate credit risk of lease and purchase agreements unless an operating memorandum provides otherwise. (*Id.* at 4.)  The section goes on to provide "full recourse to Textron" in that TFC has the right at all times and within its sole discretion to sell to Textron any account receivable on which Textron bears the credit risk that has become overdue or uncollectible. (Ex. A at 4.)  As part of such a sale, Bell apparently acquires TFC's rights to enforce the related agreement and collect on the account.  (Bell's In-Camera Doc. Br. App. at 4.)

The Receivables Purchase Agreement further provides that "[t]he terms and conditions upon which such products shall be purchased and leased by TFC shall be as agreed and as reflected in Operating Memoranda from time to time." (Ex. A at 3.)  Bell has included an operating memorandum (Ex. B) between the same parties involved in the Receivables Purchase Agreement to establish that the default rule has not been altered.  (Ex. B at 1.)  An "Operating Agreement," which contains the same relevant terms as the Receivables Purchase Agreement, has also been provided by Bell.  (Ex. C.)

Bell insists that the effect of the full-recourse provision of the Receivables Purchase Agreement and the Operating Agreement is to "transfer[] the [Agreement] from TFC to Bell in its entirety *in*

10

*the event that the account becomes overdue*." (Bell's In-Camera Doc. Br. at 4 (emphasis added).) And although not cited in connection with this argument, Bell has provided evidence that Helisul's account became overdue as early as March 1999 and was overdue as late as January 2002. (Def.'s Resp. App., doc. #93, at 311-30.) But the language of the Receivable Purchase Agreement does not provide Bell with full recourse as a result of an account's becoming overdue. Instead, Bell is given full recourse when TFC exercises its discretionary right to sell to Bell an overdue account. Bell has pointed to no evidence that this has occurred. Thus, Bell has not established that the right to invoke the forum-selection clause has been transferred to it via the Receivables Purchase Agreement.

Bell also argues that the parties' course of dealing allows it to invoke the forum-selection clause. According to Bell, despite the fact that the Agreement names TFC as the lessor, Bell stepped into TFC's shoes in administering the lease. Helisul applied for financing with Bell, not TFC. (*Id.* at 307-310.) And the overall transaction and the financing terms were negotiated by Helisul with Bell. (Bell's In-Camera Document Br. App. at 5.) These facts likely led Eloy Biesuz, Helisul's president, to state at multiple points in his deposition that Helisul obtained financing through Bell. (Def.'s Resp. App. at 376, 377, 378, and 390-91.)

Bell also points to caselaw to show that a broad range of "transaction participants," rather than solely parties to a

contract, may invoke a forum-selection clause. *See, e.g., Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988). "[C]ourts in this country . . . enforce forum selection clauses in favor of nonparties 'closely related' to a signatory." *Fretsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995). And while there appears to be no case from the United States Court of Appeals for the Fifth Circuit addressing the issue, other district courts in this circuit have recognized that forum-selection clauses may be enforced by non-signatories. *Miele v. Blockbuster Inc.*, No. 3-04-CV-1228-BD(P), 2005 U.S. Dist. LEXIS 1100, at *11 (N.D. Tex. Jan. 26, 2005) (citing *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 237 (S.D. Tex. 1997) ("[I]n order to enforce the forum selection clause, plaintiff must establish a 'close relationship' to a signatory to the contract.").

But the "close relationship" standard is so vague as to be unworkable. *See Fretsch,* 56 F.3d at 827. Further complicating matters, other courts' attempts at fleshing out the standard are not readily applied to this case. For example, in *Fretsch v. Refco, Inc.*, the United States Court of Appeals for the Seventh Circuit observed that the vague formula could "be given meaning by reference to the principle of mutuality." *Id.* That is, a non-signatory may invoke a forum-selection clause to the extent the clause could be invoked against it. *See id.* at 827-28. But the forum-selection clause in this case specifically provides that TFC is not limited

12

as to where it may bring suit against Helisul.  To the extent that it is so closely related to TFC that it may invoke the forum-selection clause, Bell is also free to choose any appropriate forum for a suit against Helisul under the terms of the Agreement. Consequently, the principle of mutuality is of no aid here.

Courts have also compared a non-signatory's attempt to invoke a forum-selection clause to an attempt by a non-signatory to invoke an arbitration clause.  *See Alternative Delivery Solutions v. R.R. Donnelley & Sons Co.*, No. SA-05-CA-0172-XR, 2005 U.S. Dist. LEXIS 15949 (W.D. Tex. July 8, 2005).  The prevailing test in the Fifth Circuit as to whether a non-signatory may invoke an arbitration clause is whether the signatory must rely on the terms of the written agreement containing the arbitration clause in advancing its claims against the non-signatory or whether the signatory has raised allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.  *See Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000).  But as a third-party defendant in this case, Helisul, the signatory, has made no allegations at all against Bell, the non-signatory attempting to invoke the forum-selection clause.

A review of the cases relied upon by Bell demonstrates that the "close relationship" standard incorporates third-party-beneficiary principles.  *See, e.g., Coastal Steel Corp. v. Tilghman*

13

*Wheelabrator, Ltd.*, 709 F.2d 190, 202-03 (3d Cir. 1983). "[W]here the non-party is a third party beneficiary of the disputed contract and it is foreseeable that dispute resolution would occur in a foreign jurisdiction," the non-party should be able to enforce the forum-selection clause. *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984). This is the clearest statement of the third-party-beneficiary underpinnings of the "close relationship" standard. It seems, however, to be more broad than the pure third-party-beneficiary principle in that under contract law only intended beneficiaries may enforce a promisor's duty. RESTATEMENT (SECOND) OF CONTRACTS § 304. And a beneficiary is only intended where its right to performance is appropriate to effectuate the intent of the parties to the contract and either performance will satisfy the promisee's obligation to pay the beneficiary money or the circumstances indicate it is intended that the beneficiary be benefitted. *Id.* at § 302.

It may thus now be apparent that enforcement of a forum-selection clause by a non-signatory is  an area of the law dominated by generalized statements that provide little guidance to this Court's analysis. What is more, the facts of this case present what is, in this Court's estimation, a close call. But given that this issue arises in the context of a motion to reconsider, the Court gives some deference to Bell's position. Helisul had a full and fair opportunity to make its arguments but Bell's status as a non-

signatory to the Agreement was never raised.   To the contrary, Helisul's arguments and evidence led the Court to believe that Bell was in fact a party to the Agreement.

With this in mind, the Court concludes that under either the more general statement of the "close relationship" standard, or the more strict third-party-beneficiary principles, Bell has established its authority to invoke the forum-selection clause.  Bell is clearly closely related both to TFC and this transaction.  Bell and TFC have a common parent company and Bell sold the helicopter involved in the crash to TFC under a long-standing operating agreement.

Moreover, Helisul dealt with Bell directly on issues that would appear to be more properly the province of TFC as the financing company, such as the initial application for financing and negotiation of the terms of financing.  Indeed, the purported error in the Court's previous ruling and the advancement of Helisul's motion for reconsideration flow from Helisul's own characterization of Bell as a party to the Agreement.

These facts establish that Bell was not merely closely related to the transaction and a party thereto--it was an intended beneficiary of the Agreement.   Helisul knew the subject of the Agreement was a Bell helicopter and its course of dealing with Bell demonstrates that Helisul knew Bell was involved with and would benefit from the transaction.  To the extent that this arrangement and financing through TFC facilitated what amounted to Bell's sale

15

of a helicopter to Helisul, Bell benefitted as much from the Agreement as did TFC.

Having determined that Bell may invoke the forum-selection clause, the Court must determine the scope of such clause. *See Marine Chance Shipping v. Sebastian*, 143 F.3d 216, 222-23 (5th Cir. 1998). The scope of a forum-selection clause is not necessarily limited to claims for breach of the agreement in which the clause is found. *See id.; see also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (noting there is "ample precedent" that the scope of a forum-selection clause is not restricted to claims for breach of the contract containing the clause). Instead, a court "must look to the language of the parties' contract[]" to determine whether a cause of action is governed by a forum-selection clause. *Sebastian*, 143 F.3d at 222.

After a review of the relevant provisions, the Court concludes that all of Bell's claims against Helisul fall within the scope of the forum-selection clause. The Agreement provides that "Lessee consents to the non-exclusive jurisdiction of the courts of general jurisdiction for the State of Texas, County of Tarrant, or in the Federal District Court of the Northern District of Texas, Fort Worth Division." This clause does not attempt to limit Helisul's consent to claims for breach of the Agreement. The Agreement goes on to provide that Helisul would "indemnify [Bell], defend and hold [Bell] harmless from any and all liability, loss, damage, expense

16

(including legal expenses and reasonable attorney's fees), suits, claims or judgments arising from injury to person or property, or resulting from or based upon Lessor's ownership of the Aircraft, or the actual or alleged selection, control, use, operation, maintenance, possession, delivery or transportation of the Aircraft." Thus, Bell's indemnity claim is clearly within the scope of the clause. (App. at 43.)

Bell's negligence and contribution claims are also within the scope of the clause. Again, the language of the clause is not limited to breach-of-contract claims. *Cf. Maxen Capital, LLC v. Sutherland*, No. H-08-3590, 2009 U.S. Dist. LEXIS 29308, at *18 (S.D. Tex. Apr. 3, 2009) (noting clauses that cover disputes over the "implementation and interpretation of" or "arising from" an agreement are narrowly construed). To the contrary, the broad consent to jurisdiction is accompanied by an indemnity clause in which Helisul agrees to defend and indemnify Bell for any and all liability based on Helisul's actual or alleged use, operation, or maintenance of the helicopter. (Def.'s App. at 43.) Helisul also stipulates in the Agreement that it is the owner and operator of the helicopter for all legal purposes, and agrees to "be fully and solely liable for any and all civil and criminal liabilities, obligations, losses, damages, actions, expenses in connection therewith that in any way may result from or arise out of the possession, use or operation of the [helicopter]." (*Id.* at 42.)

17

Moreover, Helisul agrees to operate and maintain the helicopter "in compliance with all applicable laws and regulations of the U.S.A." and, specifically, in compliance with regulations promulgated by the Federal Aviation Administration. (*Id.* at 42-43.)   In light of these provisions and taking the Agreement as a whole, the forum-selection clause encompasses tort claims, such as negligence, based on Helisul's operation and maintenance of the helicopter. *See Sebastian*, 143 F.3d at 223 (concluding that clause contained in employment contract that applied to "[a]ny and all disputes or controversies arising out of or by virtue of this Contract" applied to tort causes of action arising during such employment); *Sutherland*, 2009 U.S. Dist. LEXIS 29308, at *18 (characterizing clause that applied to "any lawsuit, claim, dispute, or other action related to" the agreement in question as "broad, encompassing all claims that have some possible relationship with the contract, including claims that may only relate to the contract"); *also cf. Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action . . . .").


2.  Specific Jurisdiction

The Court further concludes that, independently of the forum-selection clause, it may exercise personal jurisdiction over Helisul

as to all of Bell's claims.   A court may exercise specific jurisdiction over a party when the party "has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)(citations omitted).   A plaintiff must present prima-facie evidence that personal jurisdiction over a defendant is proper.   *Wyatt v. Kaplan*, 686 F.2d 276, 278 (5th Cir. 1982).   The Court must accept as true all of Bell's uncontroverted jurisdictional allegations, and resolve in Bell's favor all conflicts in the evidence submitted on the personal-jurisdiction issue.   *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

a.   Purposeful Availment

"So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King*, 471 U.S. at 476 n. 17 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).   In the case of a contractual relationship between a resident plaintiff (or in this case a third-party plaintiff) and non-resident defendant, courts must "look to the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [the defendant] purposefully established minimum

19

contacts with the forum." *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985). Consideration of such factors fosters a "highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479; *see also Gundle Lining Constr. Corp. v. Adams County Asphalt*, 85 F.3d 201, 205 (5th Cir. 1996) (taking a "highly realistic approach, cognizant of the commercial realities" in assessing personal jurisdiction based on a contractual relationship).

The Agreement represents the culmination of negotiations between Bell and Helisul. In his deposition, Helisul's president asserts that the Agreement was written on a standard form used by Bell, and that Bell would not negotiate its terms. (Helisul's Reply App. at 55-56.) But evidence in the record indicates that there were, in fact, negotiations related to the Agreement that amounted to contacts by Helisul with the State of Texas. He also acknowledges that his company specifically sought out Bell helicopters because of their quality. (Def.'s App. at 388-91.) The helicopter at issue was outfitted with various accessories at an additional cost of $68,500. (*Id.* at 168-74.) Addenda to the Agreement, apparently sent by Helisul to Bell in Texas, indicate Helisul requested that certain accessories be added and others be removed from the helicopter. (*Id.*)

Bell claims that the Agreement was executed in Texas. But Helisul representatives appear to have signed the Agreement in Brazil. (*Id.* at 51). The copies of related documents submitted by Bell, which were purportedly executed in Texas, are of such a poor quality that the Court cannot determine their content and will not consider them. (*Id.* at 82-89.)

The terms of the Agreement must also be considered in evaluating Helisul's contacts with Texas. *Gundle Lining Construction*, 85 F.3d at 205 (stating a court must "review the terms of the contracts at issue . . . in order to determine if they, along with the defendant's other contacts [are] sufficient to confer jurisdiction"). As described above, the Agreement contains broad language regarding Helisul's consent to this Court's jurisdiction. Such a term is a purposeful contact which puts a defendant on notice that it is subject to being haled into the courts of the chosen forum. *See id.* (evaluating a clause that functioned similarly to a forum-selection clause as a contact with the forum).

This conclusion is particularly strong in this case given the other terms of the Agreement. Helisul acknowledges that, for all legal purposes, it is the owner and operator of the helicopter and, as such, is fully and solely responsible for any and all civil liabilities arising out of such ownership and operation. Helisul further agrees to defend and indemnify Bell with regard to any and all civil liabilities that may arise out of Helisul's ownership or

operation of the helicopter.   And Helisul agrees to operate and maintain the helicopter in accordance with the laws of the United States.   In this context, Helisul, without restriction, consented to this Court's jurisdiction.   This supports a finding of purposeful availment.   *See id.* at 205-06 (concluding non-resident defendant's entry into contract with Texas plaintiff containing agreement to indemnify plaintiff and clause that functioned similarly to a forum-selection clause by allowing suit in Texas supported conclusion that defendant was subject to personal jurisdiction in Texas).

Additionally, the Agreement contains a choice-of-law provision selecting Texas law as governing construction of the Agreement. (Def.'s App. at 47.).   Helisul took delivery of the helicopter in Texas.   (*Id.* at 386-87.)   These aspects of the purchase of the helicopter further strengthen the conclusion that Helisul has purposefully availed itself of the benefit of doing business in Texas.   *See Burger King*, 471 U.S. at 482 (considering a choice-of-law provision selecting Florida law as a factor supporting specific jurisdiction over the defendant in Florida); *see also Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 188-89 (5th Cir. 1978) (concluding that F.O.B. shipping-point provision, without more, is not purposeful availment of the laws of the forum state); *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 820 n.2. (8th Cir. 1994) (holding that a "delivery term in a contract [can] not create sufficient contacts to uphold jurisdiction" but "[s]uch delivery

terms are not irrelevant to a finding of personal jurisdiction").

Moreover, the Agreement resulted in a business relationship between Helisul and Bell with significant long-term consequences. *See Burger King*, 471 U.S. at 480 (considering long-term consequences of contract in assessing personal jurisdiction). The Agreement embodies a 10-year lease-purchase agreement between Bell and Helisul. (Def.'s App. at 52.) Bell provides training of Helisul pilots and mechanics in Fort Worth. (*Id.* at 7-33.) Bell also provides customer support services. (*Id.* at 3.) Helisul applied for financing of the Agreement through Bell. (*Id.* at 307-310.) And when Helisul fell behind on its payments under the Agreement, communications were sent back and forth between Bell and Helisul to arrange payment. (*Id.* at 311-330.) Such a long-term interdependent relationship, coupled with the provisions of the Agreement contemplating jurisdiction in Texas and the application of FAA regulations and Texas law, together establish sufficient minimum contacts for this Court to exercise jurisdiction over Helisul. *Burger King*, 471 U.S. at 480-82 (concluding that franchise agreement, which included choice-of-law provision selecting Florida law, and resulting 20-year interdependent relationship, were sufficient to establish minimum contacts for personal jurisdiction in Florida).

Perhaps most importantly in a case such as this, the Court must look to the parties' course of dealing and the realities of the

transaction to determine whether Helisul is subject to jurisdiction in Texas. *See id.* at 479 (stating a court must take a realistic view of the transaction at issue); *see also Spademan*, 772 F.2d at 1193 (noting parties' actual course of dealing is a factor to consider in personal-jurisdiction analysis). Helisul began purchasing helicopters from Bell in 1986. Helisul purchased the helicopter at issue, along with four others, in 1996. (Def.'s App. at 34-57, 58-81, 82-89, 165-306, 386.) And Helisul's president stated that at the time of his deposition Helisul was in the process of purchasing additional Bell helicopters and would continue to purchase Bell helicopters. (*Id.* at 386.) Thus, Helisul has created a substantial, ongoing business relationship with a resident of Texas by way of a series of lease-purchase agreements. In each of these agreements, Helisul acknowledges that it is solely responsible for any liability that arises from the ownership or operation of the helicopters, agrees to defend and indemnify Bell for any claims based on maintenance or operation of the helicopters, agrees that Texas law governs the agreements, and, without restriction, consents to the jurisdiction of this Court. Ultimately, the Court must assess whether Helisul's contacts with Texas are "such that [it] should reasonably anticipate being haled into court" here. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993). Given these circumstances, Helisul should have anticipated being sued in this Court by Bell for claims based on its ownership,

maintenance, or operation of the helicopter. *Cf. Gundle Lining Constr. Corp.*, 85 F.3d at 205-07 (concluding defendant was subject to personal jurisdiction in Texas based on contract with Texas resident that involved on-going relationship, which contained forum-selection-type clause agreeing to jurisdiction in Texas, and in which defendant agreed to indemnify plaintiff).

### b.   Relation of Contacts to Claims

To establish specific jurisdiction, the claims must "arise out of or relate to" the defendant's purposeful contacts with the forum. *Burger King*, 471 U.S. at 472 (citations omitted). Thus, the Court must determine whether Bell's negligence and contribution claims arise out of or relate to the contacts identified above.

Bell alleges that Helisul was negligent with regard to its ownership, inspection, maintenance, and operation of the helicopter. (Third-Party Compl., doc. #41, at 4-5.) As discussed above, Helisul has clearly consented to jurisdiction regarding Bell's indemnity claim. And the indemnity provision, along with the other circumstances of this case, establish that Bell's negligence and contribution claims relate to the Agreement.

In the Agreement, Helisul agrees to defend and indemnify Bell from any and all claims, suits, damages, expenses, or judgments resulting from Helisul's operation, maintenance, or control of the helicopter, as well as to accept full and sole legal responsibility

25

for the operation and maintenance of the helicopter. (Def.'s App. at 42-43.)   Thus, the Agreement creates a duty on the part of Helisul to defend, indemnify, and otherwise protect Bell from loss, liability, or expense that may be attributed to Helisul's maintenance or operation of the helicopter.   In this way, claims based on Helisul's operation and maintenance of the helicopter relate to the Agreement, and this Court's exercise of specific jurisdiction over Helisul with regard to such claims is proper. *Cf.* *Burger King*, 471 U.S. at 480 (concluding non-resident was subject to jurisdiction in Florida where it was foreseeable that his continued use of trademarks and confidential business information after failing to pay franchise fees would injure Florida-based franchisor); *cf. Trinity Indus. v. Myers & Assocs*., 41 F.3d 229, 231 (5th Cir. 1995) (finding that attorney was subject to specific jurisdiction in Texas in legal malpractice suit because, although the alleged malpractice occurred in another jurisdiction, the attorney-client relationship with the resident plaintiff was formed in Texas and, but for this relationship, the attorney would not have owed the duty allegedly breached).

D.  Interlocutory Appeal

Finally, Helisul requests that, in the event the Court does not grant its motion to reconsider, the Court allow an interlocutory appeal under 28 U.S.C. § 1292(b).   Under § 1292(b) a court may

certify for appeal an otherwise unappealable order when such order involves a controlling question of law as to which there is substantial ground for difference of opinion and when immediate appeal would materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). The issue of personal jurisdiction over Helisul certainly controls as to any claims against it. As discussed above, there is at least room for debate as to whether Bell may invoke the Agreement's forum-selection clause and whether such clause encompasses Bell's negligence claim. And while the issue of Helisul's consent to jurisdiction and, more specifically, Bell's ability to invoke that consent, touches upon a fairly unrefined area of the law, the Court concludes that an interlocutory appeal is unnecessary. The foregoing analysis establishes that the Court may exercise specific jurisdiction over Helisul, as well rely on the forum-selection clause. Similarly, the Court's ruling on judicial estoppel is within the Court's discretion and does not warrant an interlocutory appeal. *Cf. Johnston v. Multidata Sys. Int'l Corp.,* No. G-06-CV-313, 2007 U.S. Dist. LEXIS 50879, at *6-7 (S.D. Tex. July 13, 2007) (interlocutory appeal inappropriate despite potential "difference of opinion" where court applied well-settled precedent in resolving arguments).

## III. Conclusion

Accordingly, the Court concludes that Helisul consented to

jurisdiction regarding all of Bell's claims.  The Court further concludes that Helisul has purposefully established minimum contacts with the state of Texas, and that Bell's negligence and contribution claims relate to such contacts, such that this Court may exercise specific jurisdiction over Helisul.  Helisul's motion to reconsider is, therefore, DENIED.  Helisul's request for certification to appeal an interlocutory order under 28 U.S.C. § 1292(b) is also DENIED.

SIGNED August 13, 2009.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE