```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                         FORT WORTH DIVISION

MARIA DALVA VIERA DE              §
OLIVERA DOS SANTOS                §
      Plaintiff                   §
                                  §
VS.                               §
                                  §
BELL HELICOPTER TEXTRON, INC.     §    CIVIL NO. 4:06-CV-292-Y
      Defendant/Third-Party       §
      Plaintiff                   §
                                  §
VS.                               §
                                  §
HELISUL TAXI AERO LTDA            §
      Third-Party Defendant       §
```

## ORDER GRANTING IN PART AND DENYING IN PART EMERGENCY MOTIONS FOR PROTECTIVE ORDER

Pending before the Court is the Emergency Motion for Protective Order (doc. #165) and the Supplemental Emergency Motion for Protective Order (doc. #169) filed by defendant and third-party plaintiff Bell Helicopter Textron, Inc. ("Bell"). In the motion, Bell seeks a protective order relieving it from complying with certain requests for production and deposition notices served on it by third-party defendant Helisul Taxi Aero, LTDA ("Helisul").

Generally speaking, discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Rule 26(c) provides that a party "from whom discovery is sought may move for a protective order in the court

where the action is pending" and a court "may, for good cause, issue an order to protect" the party. Fed. R. Civ. P. 26(c). "[T]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). More specifically, a party seeking protection from discovery requests on the grounds of privilege bears the burden of establishing that a privilege applies. *See Apex Mun. Fund v. N-Group Securities*, 841 F. Supp. 1423, 1432 (S.D. Tex. 1993).

Generally speaking, via the discovery requests at issue, Helisul seeks information on the relationship between Bell, its parent company Textron, Inc. ("Textron"), and its sister company Textron Financial Company ("TFC"). Bell insists that such information is irrelevant to its claims and is merely an attempt by Helisul to relitigate issues that have already been resolved in this case.

The issue of this Court's jurisdiction over Helisul consumed a good deal of the early stages of this litigation. Helisul is a Brazilian company with limited contacts with the Northern District of Texas. Ultimately, after a motion to dismiss and two motions to reconsider, the Court concluded that Helisul had consented to its

jurisdiction by way of a forum-selection clause. *See De Olivera Dos Santos v. Bell Helicopter Textron, Inc.*, 4:06-CV-292-Y, 2009 U.S. Dist. LEXIS 71356 (N.D. Tex. Aug. 13, 2009). The clause is found in the lease agreement by which Helisul leased the helicopter involved in the crash that gave rise to this products-liability and wrongful-death action and provides, inter alia, that Helisul "consents to the non-exclusive jurisdiction of the . . . Federal District Court of the Northern District of Texas, Fort Worth Division." *Id.* at *4.

In its motion to reconsider, Helisul argued that Bell could not enforce the forum-selection clause because it is not a party to the lease agreement. The lease agreement specifies that it is between Helisul as lessee and TFC as lessor and never mentions Bell. *Id.* at *10-*11. Even so, the Court concluded that Bell could enforce the forum-selection clause as third-party beneficiary of the lease, or as a party "closely related" to the lease transaction. *See id*. at *14-*19.

Citing the law-of-the-case doctrine, Bell argues that, in light of the Court's ruling that it can enforce the forum-selection clause, the information Helisul seeks has no bearing on any issues still before the Court. Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). But the issue of

3

Bell's ability to enforce the forum-selection clause, particularly in the convoluted context in which it arose, is a separate issue from Bell's ability to enforce the lease agreement as part of its substantive claims. *Cf. id.* (noting the law-of-the-case doctrine directs a court's discretion but does not limit its power, and was created for use in "ordinary litigation").

While the Court did rule that Bell may enforce the forum-selection clause, it initially did so without the benefit of Helisul's argument that Bell was not a party to the lease agreement. Helisul simply failed to point out that Bell was not the lessor, instead focusing on a minimum-contacts analysis in which it loosely referred to Bell as being a part of the lease transaction. The Court later denied Helisul's motion to reconsider, giving some deference to Bell's arguments because of the reconsideration context, concluding that Bell was both closely related to the lease agreement and an intended beneficiary of such agreement. *Id.* at *14-*19. What is more, the Court specifically concluded that Bell had failed to show that it had been assigned the right to full recourse against Helisul under its contractual arrangement with its parent company, Textron, Inc. ("Textron") or its sister company, Textron Financial Company. *Id.* at *13-*14. And the Court's recognition of the fact that specific contractual provisions govern Bell's entitlement to seek recourse against Helisul counters Bell's argument that the Court's ruling that it is

4

a third-party beneficiary of the lease's forum-selection clause equates to a ruling that it may enforce any provision of that agreement.  Bell's right to take such action has not been established thus far in this litigation, making any contractual arrangement between itself and Textron or TFC that it would argue creates such a right relevant.  Thus, Bell cannot avoid Helisul's discovery requests based on the law-of-the-case doctrine.

Having determined that Bell cannot wholly avoid Helisul's discovery requests under the law-of-the-case doctrine, the Court now turns to Helisul's specific requests.  Helisul seeks to depose Bell's Rule 30(b)(6) witnesses on various topicS regarding Bell's relation with TFC and Textron.  By topic numbers 1-6, 10-12, and 14-32, Helisul seeks:

> 2. Textron Financial Corporation's financial operations relating to aircraft leases and accounting for intercompany transactions between Textron Corporation, Textron Financial Corporation and Bell Helicopter Textron Inc.
>
> 4. Textron Corporation's marketing operations relating to leasing of aircraft to or in support of Textron Financial Corporation.
>
> 5. Textron Financial Corporation's marketing operations relating to leasing of aircraft.
>
> 6. Bell Helicopter Textron, Inc.'s marketing activities relating to or in support of Textron Financial Corporation.
>
> 11. Knowledge about sales programs, commissions, accounting for sales and servicing of products sold or leased of Textron Corporation, Bell Helicopter Textron, Inc. and Textron Financial Corporation.

5

12. Identifying, accessing and classifying credit risks for Textron Corporation, Textron Financial Corporation or Bell Helicopter Textron, Inc.

16. Financing incentives of Textron Financial Corporation, Textron Inc. and Bell Helicopter Textron Inc.

18. Transferred pricing arrangements of Textron Financial Corporation with Textron Inc. or Bell Helicopter Textron, Inc.

19. Ownership of Textron Financial Corporation

20. Ownership of Bell Helicopter Textron Inc.

21. Dividend policy for Textron, Inc.

22. Dividend Policy for Textron Financial Corporation

23. Dividend Policy for Bell Helicopter Textron, Inc.

24. Tax returns of Textron Financial Corporation.

25. Tax returns of Bell Helicopter Textron Inc.

26. Tax returns of Textron Inc.

27. Officers of Textron Financial Corporation

28. Officers of Textron Inc.

29. Officers of Bell Helicopter Textron, Inc.

By way of its second and fifth requests for production, Helisul seeks the documents corresponding to these topics.

Bell first objects to these topics as overly broad and irrelevant. After review of the requests and Helisul's response, the Court agrees with regard to topics 2, 4-6, 11-12, 16, and 18-29. The general financial, marketing, and accounting information requested under these topics simply has no bearing on this case. Bell's claims are based on a particular lease agreement, and those

6

claims are predicated on its ability to enforce that agreement pursuant to certain contracts it entered into with Textron and TFC. The general information Helisul seeks has no relevance to this arrangement. Nor does basic corporate governance information regarding TFC and Textron have any relevance to this case. Thus, the motion for protective order is GRANTED as to topics 2, 4-6, 11-12, 16, and 18-29 and requests for production related to these topics.

Topics 7-9, 13, and 33-34, are a different matter. Bell first argues that these topics are irrelevant. By these topics, Helisul seeks information on:

> 1. Accounting for intercompany transactions between Textron Corporation, Textron Financial Corporation and Bell Helicopter Textron Inc.
>
> 3. Bell Helicopter Textron Inc.'s accounting for transactions between Bell Helicopter Textron Inc., Textron Corporation, and Textron Financial Corporation.
>
> 7. Contractual relations between Textron Corporation and Textron Financial Corporation under the support agreement between Textron Corporation and Textron Financial Corporation.
>
> 8. Contractual Relations between Bell Helicopter Textron, and Textron Financial Corporation.
>
> 9. Contractual relations between Bell Helicopter Textron, Inc. and Textron Corporation.
>
> 10. Financial operations relating to intercompany transactions between, or among, Textron Financial Corporation, or Textron Corporation, Bell Helicopter Textron, Inc. and Textron Financial Corporation.

7

  13. Support agreements between Textron Financial Corporation or Textron Inc. or Bell Helicopter Textron, Inc.

  14. Cross-default covenants between Textron Corporation, Textron Financial Corporation or Bell Helicopter Textron, Inc.

  15. Keep well type agreements between Textron Financial Corporation, Textron Inc. and Bell Helicopter Textron Inc.

  17. Intercompany obligations between Textron Financial Corporation, Bell Helicopter Textron, Inc. or Textron, Inc.

  33. The receivable purchase agreement between Textron Financial Corporation and Textron, Inc.

  34. The Operating Memorandum between Textron Financial Corporation and Textron, Inc.

As noted, Bell seeks to enforce the lease agreement's defense and indemnity clauses against Helisul. And Bell seeks to do so not as a party to that agreement, but as a product of an assignment of rights under certain agreements it has entered into with TFC and Textron. Evidence related to Bell's ability to enforce the lease agreement is not merely relevant--it is essential to Bell's claim for indemnity. These topics seek discovery of information regarding Bell's relationship with Textron and TFC as a means to assess that ability. Hence, the topics seek relevant information.

  Bell also argues that these topics are overly broad and seek the disclosure of trade secrets. Under Texas law, a trade secret is "any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to

8

obtain an advantage over competitors who do not know or use it." *Computer Assocs. Intern. v. Altai*, 918 S.W.2d 453, 455 (Tex.1994). Texas courts apply a six-factor test in determining whether information is to be regarded as a trade secret. Under this six-factor text, Bell argues that the requested information must be treated as trade secrets because Bell has gone to great lengths to limit access to the agreements that define its relationship with TFC and Textron at significant cost and that disclosure of the information would put Bell at a competitive disadvantage in the helicopter industry.

The Court need not decide whether the contracts between Bell, TFC, and Textron are trade secrets. Helisul does not argue that the contracts are not trade secrets. More importantly, even assuming they are trade secrets, they are subject to discovery if they are "material and necessary to the litigation." *In re Continental General Tire, Inc.*, 979 S.W.2d 609, 615 (Tex.1998).

Again, Bell must prove, as part of its claims predicated on the lease agreement, that it is entitled to enforce the agreement. That is, that documents demonstrating Bell's entitlement to enforce the lease agreement are "material and necessary" to this litigation. Thus, even if they are trade secrets, they are discoverable. However, given the sensitive nature of the documents, the Court will allow only limited discovery. *Cf.* Fed. R. Civ. P. 26(c)(1)(G) (authorizing court to order that trade

9

secrets not be revealed or revealed in only specified way). Accordingly, the Court ORDERS that Bell's Rule 30(b)(6) witnesses be prepared to discuss topics 1, 3, 7-10, 13-15, 17, and 33-34, to the extent that these topics bear upon Bell's authority to enforce the lease agreement between Helisul and TFC.  Bell must also produce to Helisul all documents, including contracts, agreements, and like documents, between itself and TFC, Textron, and any other entity that bears upon Bell's authority to enforce the lease agreement between Helisul and TFC.  Helisul is ORDERED to maintain this information as "confidential information" in accordance with the agreed protective order (doc. #148) entered September 15, 2009. This restriction of the scope of topics 1, 3, 7-10, 13-15, 17, and 33-34 sufficiently narrows these topics to answer any complaint that the topics are too broad.

    SIGNED November 9, 2009.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE